WILLIAM I. CLARK et al., Respondents, *v.* WELLS S. DICKINSON, Appellant.

J. L. P. & Co. and plaintiffs entered into two contracts by which the former was to purchase and the latter to sell a quantity of oil at a specified price, deliverable at plaintiffs' option during the year 1867. J. L. P. & Co. sold and assigned the contracts to defendant, of which plaintiffs had notice. The market price of oil having fallen, plaintiff and J. L. P. & Co. entered into an agreement by which, in consideration of the plain-

tiffs agreeing to release them from all liability, J. L. P. & Co. agreed to pay $2,500 in cash and to give plaintiffs "all over this sum that shall be realized" from defendant on said contracts; the money to make the payment specified was furnished by defendant. Plaintiffs tendered to defendant the oil and demanded payment, which was refused. In an action to recover the difference between the contract price and the market price at the time of the tender, *held*, that there was no such privity between the parties as rendered defendant liable to plaintiffs for breach of the contracts; that the effect of the transfer was to create an implied contract on the part of defendant to indemnify J. L. P. & Co.; and, the latter having been released from liability, this was a final adjustment of the contracts.

*Holmes* v. *Weed* (19 Barb., 128), distinguished.

(Argued April 22, 1878; decided May 28, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiffs, entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover damages for an alleged breach of a contract for the purchase and sale of a quantity of oil.

The facts appear sufficiently in the opinion.

*Edward Fitch*, for appellant. Defendant was not substituted in the place of J. L. Pierce & Co. as purchaser under the contracts in suit. (*Tatlock* v. *Harris*, 3 T. R., 174; *Wilson* v. *Coupland*, 5 B. & Ald., 228; *Heaton* v. *Angier*, 7 N. H., 397; *Thompson* v. *Percival*, 3 B. & Ad., 925; *Cuxon* v. *Chadley*, 3 B. & C., 591; *Butterfield* v. *Hartshorn*, 7 N. H., 345; *Warren* v. *Batchelder*, 15 id., 129; *Wharton* v. *Walker*, 4 B. & C., 163; *French* v. *French*, 2 M. & G., 644; *Thomas* v. *Shilliber*, 1 M. & W., 124; *Moore* v. *Hill*, 2 Peake, 10; *Maxwell* v. *Jameson*, 2 B. & Ald., 55; *Short* v. *City of New Orleans*, 4 La. An., 281; *McKinney* v. *Alois*, 14 Ill., 34.) By making a voluntary settlement with plaintiffs Pierce & Co. released defendant from his implied contract to indemnify them. (*Turner* v. *Richardson*, 7 East, 335; *Stevenson*

v. *Lombard,* 2 id., 575; *Webb* v. *Russell,* 3 T. R., 193; *Damainville* v. *Mann,* 32 N. Y., 197; *Van Rensselaer* v. *Gallup,* 5 Den., 460; *Davis* v. *Morris,* 36 N. Y., 569.) The court erred in refusing to grant the motion for a dismissal of the complaint. (*Sheldon* v. *At. F. and M. Ins. Co.,* 26 N. Y., 465.)

*Geo. A. Black,* for respondents. The obligation existing between Pierce & Co. and defendant by the transfer of plaintiffs' contracts to him is to be inferred from the transaction. (*Burnett* v. *Lynch,* 5 B. & C., 601; *Walker* v. *Bartlett,* 18 C. B., 845, 849, 860–863; *Shaw* v. *Fisher,* 1 Jur. [N. S.], 971; 5 DeG. McN. & G., 596; *Wynne* v. *Price,* 3 DeG. & S., 310; *Hawkins* v. *Maltby,* L. R. [4 Ch. App.], 200; *Coles* v. *Bristow,* id., 3; *Evans* v. *Wood,* L. R. [5 Eq. Cas.], 9, 11; *Grissel* v. *Bristowe,* L. R. [4 C.], 37; *Sheppard* v. *Murphy,* 18 W'kly R., 956; *Kellock* v. *Enthoven,* 21 id., 944; *Robert* v. *Crowe,* L. R. [7 C.], 629; *Monk* v. *Garrett,* L. R. [3 Exch.], 133; *Wolveridge* v. *Steward,* 1 C. & M., 644; *Holmes* v. *Weed,* 19 Barb., 135.) The release of Pierce & Co. did not discharge defendant. (*Tombeckbee Bk.* v. *Stratton,* 7 Wend., 432; *Raymond* v. *Squire,* 11 J. R., 47.) Pierce & Co. were entitled to recover of defendant all they actually paid plaintiffs under the contracts and were liable to pay the balance, and this justified them in acknowledging it to its full extent and assigning their claim to plaintiffs. (*Clason* v. *Moons,* 10 J. R., 539; *Elwood* v. *Diefendorf,* 5 Barb., 413.) The fact that Pierce & Co. have not paid the balance is no reason for relieving defendant. (*Vail* v. *Foster,* 4 N. Y., 312; *Curtis* v. *Tyler,* 9 Paige, 431; *Utica Bk.* v. *Ganson,* 10 Wend., 314; *Crosby* v. *Crafts,* 5 Hun, 329.)

*Per Curiam.* The plaintiffs' demand is founded upon two contracts in writing, commonly called bought and sold notes, entered into between them and the firm of J. L. Pierce & Co., on the 28th of February, 1867, by which said J. L. Pierce & Co. bought from the plaintiffs 1,000

barrels of oil, which were deliverable at the plaintiffs' option during the remainder of the year 1867, for which the vendors agreed to pay thirty-six cents per gallon. In the month of October, 1867, said J. L. Pierce & Co., for value, sold and assigned said contracts to the defendant, and, for the purpose of transferring them, indorsed the firm name across each of said contracts and delivered them to the defendant. There is testimony showing that the plaintiffs received a written notice of the transfer of these contracts to the defendant before the expiration of the period within which they were to be performed.

On the twelfth of December following, the market price of oil having fallen, and Pierce & Co. being desirous of being relieved from the contracts in question, as well as another one for the same number of barrels, entered into an agreement in writing by which, in consideration of the plaintiffs agreeing to release them of all liability on said contracts, they agreed to pay the plaintiffs "the sum of $2,500 in cash, and also to give them all over this sum that shall be realized from W. S. Dickinson on our contracts with him," etc. This sum, at the request of Pierce, was paid by the check of Mixer, Whitman & Co., which firm had not seen the defendant in regard to the matter, prior to that time. It appears, however, that the money was furnished by the defendant. Upon the last day for the fulfillment of the contract by the plaintiffs they tendered the oil to the defendant's agents and demanded payment therefor. It was refused, and this action was brought to recover the difference between the contract price and the market price of the oil at the time when the tender was made, deducting the $2,500 paid by Pierce & Co. as hereinbefore stated.

Upon the foregoing statement of the leading facts which were presented upon the trial, the question arises whether the defendant was liable to respond to the plaintiffs in damages for a failure to accept the oil which was tendered under the contracts referred to ? Whatever may have been the intention of

the parties in the transfer of the contracts from Pierce & Co. to the defendant, it is by no means clear that the effect of such transfer was to place the defendant in the same relation to the plaintiffs that Pierce & Co. had occupied prior to that time. Although the defendant was entitled to demand and claim the oil which was agreed to be delivered, yet there was no such privity between the plaintiffs and the defendant which rendered the latter directly liable to the plaintiffs for a breach of the contract. The defendant did not occupy the same position as the assignee of a lease, who, by accepting an assignment of the same, subjects himself to the performance of all the covenants contained therein ; nor are we able to discover that there is any analogy between the case at bar and that of *Holmes* v. *Weed* (19 Barb., 128), which was a contract to indemnify and save harmless the plaintiff against fines and penalties, and to pay to other parties certain liabilities which the plaintiff had incurred. We think the case considered stands upon a different footing. The principles applied in the cases referred to have no application here, and the action cannot be maintained upon any such ground. The rights of the parties must be determined upon the construction to be placed upon, and the effect to be given to, the agreement made between Pierce & Co. and the plaintiffs on the 12th day of December, 1867.

The effect of the transfer of the contracts to Dickinson was to create an implied contract arising therefrom to indemnify Pierce & Co., the assignees or vendees of the contract of sale ; and the defendant was clearly liable to them for any damage sustained, or amount which should be paid by Pierce & Co. to the plaintiffs, by reason of their failure to perform said contract. The authorities fully sustain this doctrine. (See *Walker* v. *Bartlett*, 18 C. B., 845; *Kellock* v. *Enthoven*, 21 Weekly R., 944.) And it is conceded in the points of the appellants that this is the rule. Assuming then that such is the law applicable to the case, it follows that the defendant was liable for all losses which might be sustained by J. L. Pierce & Co. by reason of any failure to perform

the contract. The contract of December, 1867, was an adjustment, by which Pierce & Co. were relieved from liability, upon payment of a sum named therein, and it was agreed in substance that Pierce & Co. should pay the plaintiffs all over the sum paid, which might be realized over and above that named in the contracts, from the defendant. By this arrangement Pierce & Co. undertook to settle for all the damages which they might be liable to pay in consequence of the failure to fulfill the terms of the contract. They paid the sum of $2,500, and agreed to pay such sum as might afterwards be obtained by them of the defendant. The intention of the parties evidently was, that if Pierce & Co. should receive anything more of the defendant, that they should pay over the same to the plaintiffs. As Pierce & Co. settled with the plaintiffs we think it was a final adjustment of the contracts, and no claim existed in favor of the plaintiffs against Pierce & Co., or against the defendant. They could not sue Pierce & Co., because they had settled with them and parted with their claim against them ; nor could they maintain an action against the defendant as the entire claim had been arranged and discharged. Pierce & Co., by the settlement with the plaintiffs, had canceled all their liability for damages, and of course had no claim against the defendant, and could not, therefore, succeed in an action against him. The position that the contract of settlement operated as an assignment by Pierce & Co. of their claim against the defendant is not well founded, as there was no interest remaining which was assignable after the settlement had been made. The plaintiffs, therefore, acquired no claim against the defendant by the instrument executed by Pierce & Co., and had no right of action whatever against the defendant. Without considering other questions raised upon the trial, we think that the action was not properly brought, and the judge upon the trial erred in denying the motion to dismiss the complaint.

The judgment must be reversed, and a new trial granted, with costs to abide the event.

All concur, except MILLER, J., dissenting, and FOLGER, J., not voting.

Judgment reversed.